THE J. R. WATKINS MEDICAL COMPANY, *Appellant*, v. E. F. HAMM et al. (M. F. JARVIS et al., *Appellees*).

No. 18,035.

### SYLLABUS BY THE COURT.

1. APPLICATION OF PAYMENTS—*Running Account*. Rules governing the application of payments by the court have no field of operation when the payments have already been appropriated by the parties.

2. —— *Same*. Where a continuous running account is kept with one who purchases goods upon orders made from time to time in pursuance of a written agreement that he will sell the goods so purchased and make weekly reports and remittances, and this business is continued and the account is kept in the same manner after the expiration of the time limited in the contract, without any further agreement, the question whether remittances made and entered in the account after such period had expired were applied by the parties upon the items charged and entered before, or after that time, is one of fact for a jury.

3. —— *Indemnity Bond—Liability of Bondsmen*. Where the liability of a purchaser for goods sold on credit is secured by a bond which expired by its terms at a fixed date, and sales are made and the account is continued thereafter in the same manner as before, a finding that the principal is indebted for goods purchased in the period covered by the bond is not inconsistent with a finding that his sureties are not liable therefor, if it is also found that payments made by the purchaser after that period had expired were applied by the parties upon the items charged and entered in the account for goods purchased before that time.

4. REFERENCE—*When Not Error to Refuse.* A refusal to order a reference in an action upon a long account is not erroneous where only three items of the account are in controversy.

Appeal from Cowley district court. Opinion filed March 8, 1913. Affirmed.

*C. W. Roberts,* and *F. L. Richardson,* both of Winfield, for the appellant.

*A. M. Jackson,* and *A. L. Noble,* both of Winfield, for the appellees.

The opinion of the court was delivered by

BENSON, J.: This action is upon an account for goods sold by the plaintiff to defendant E. F. Hamm between the 18th day of December, 1906, and the first day of March, 1908, and a bond given by defendants M. F. and F. E. Jarvis to secure faithful performance of the contract of purchase. The sales were made under a contract between the company and Hamm which provided that the goods should be shipped from the plaintiff's place of business at Winona, Minn., to the defendant in this state, as ordered from time to time, and charged against him according to the company's price-list, the purchaser agreeing to convass a designated territory and sell at prices fixed by the company and to make weekly reports and remittances. When this contract was entered into H. L. Hamm, a brother of the defendant, was indebted to the plaintiff for goods previously sold to him. The bond secured that indebtedness also. Reports were made of goods sold, collections made, and amounts remitted, and monthly statements were sent by the company to Hamm showing the condition of his account. A copy of the account beginning February 23, 1906, was introduced in evidence in which about 100 items of merchandise are charged and about the same number of items of payments are credited. This account is continuous down to December 31, 1909, showing a balance of

$904.61, due to the company at that time when the account was closed. Balances are stated on the first of March in each year, that of March 1, 1908, being $1075.39. Goods were sold and charged on this account after March 1, 1908, to the amount of $915.77 but payments were made during the same time amounting to $1086.55, making an excess of credits over debits of $170.78 for that period.

The action was for $1075.39, due on the first day of March, 1908, the close of the period covered by the bond, less a credit of the $170.78, excess of payments over charges after that date, leaving a balance of $904.61. This is the balance shown at the close of the account. Judgment was rendered against defendant Hamm for that amount, of which he does not complain, but judgment was also rendered in favor of the sureties and this appeal is taken from that judgment. The plaintiff contends that neither the principal nor sureties are entitled to any credit on the balance of March 1, 1908, except this excess payment after that date, while the sureties contend that the entire amount remitted between March 1, 1908, and the close of the account should, as to them, be credited on such balance. It will be seen that the liability of defendant Hamm upon the whole account is not affected by the question of application of payments, but if the application of the remittances sent after March 1, 1908, is made upon the items preceding that date, that part of the account is paid and the sureties are not liable, for their obligation did not cover credits given afterwards.

Besides charges for merchandise, the following items appear:

"March 26, 1907, H. L. Hamm........ $81.36
April 27, 1907, H. L. Hamm......... 6.84
May 6, 1907, H. L. Hamm.......... 558.70"

The sureties denied the correctness of these items, but admitted the correctness of the account in other respects. The history of these charges is this: E. F.

Hamm made remittances from time to time of moneys collected for goods that had been sold by his brother. Neglecting to state in his reports that these remittances were on his brother's account, they were credited to E. F. Hamm, and afterwards, upon an agreement between the plaintiff and E. F. Hamm, they were charged back to his account and credited to the account of H. L. Hamm. While E. F. Hamm consented to this arrangement and is satisfied with it, the sureties contend that there was no competent evidence that the remittances so made were for the account of the brother or that they were properly charged against their principal.

The principal controversy arises over the application of payments. If the contention of the sureties that all remittances after March 1, 1908, should be applied on the balance then due, the judgment is right. If only the balance of the remittances made after that date in excess of the price of the goods shipped in that period should be so credited, then a further inquiry must be made to ascertain what amount was due upon the account at that time, which would involve a consideration of the disputed items.

Rules for the application of payments are discussed in the briefs. Much consideration is given to the rule that payments on a running account, if not applied by the parties, should be applied by the court to the oldest items, and also to the rule that such payments should be applied to the unsecured part of an indebtedness. Both these rules have their appropriate field of operation (*The State v. Guaranty Co.*, 81 Kan. 660, 106 Pac. 1040, 26 L. R. A., n. s., 865), but the first inquiry is whether the parties had made the application. If they had, it can not be disturbed by either of these rules.

It will be observed that while the obligation of the bond ceased on March 1, 1908, no change was made in the manner of doing business with the principal defendant. He ordered goods and made reports and re-

mittances precisely as he had done before. The company charged the merchandise and entered the credits upon the same account and sent statements just as it had theretofore done. The same business was continued in the same manner, without any further agreement, and the account was continuous. In this situation it may be presumed that it was intended that the terms of the contract should still govern. It is true that the balance of indebtedness was reduced, which may have been the result of greater watchfulness on the part of the plaintiff or of both of the parties. (*Schoonover v. Osborne,* 117 Iowa, 427, 90 N. W. 844.) The plaintiff's agent testified in general terms that after that date sales were for cash, but on his cross-examination, and upon all the evidence, the fact that they were made upon credit as before clearly appears. There is no more reason to hold that the account after March 1, 1908, was separate from that of the preceding years than that the account after March 1, 1907, was separate from that of the year 1906.

The contract provided that the purchaser—

"May run an open account with the Company, the products to be charged in accordance with the regular Traveling Salesman's Price-list before referred to, and the account to be paid by remitting to the Company each week, as per its weekly report blanks."

The orders were made, the goods sold, and the accounts were kept by the company in accordance with these terms. The monthly statements sent to the purchaser informed him of these conditions. It was a question of fact whether the payments made after March 1, 1908, were appropriated by the parties themselves to the payment of items charged before or after that date. This question was submitted to the jury by the instructions, and was determined in the affirmative by the general verdict. The jury were instructed:

"You should take into consideration the matter

[manner] in which the business was transacted and the payments made and the goods sold, and the way in which the account was kept by the plaintiff, and from all these facts and all the other evidence in the case determine whether any application had been made by the plaintiff of the payments made by Hamm, and if you find that no application of such payments have been made by the plaintiff, then it would be your duty to apply the payments made first to such separate and distinct account of the plaintiff, if any, as were unsecured."

This instruction, in connection with another, stated the principle of the application of payments to unsecured items in preference to the oldest items. While the entries in the account alone might not have the effect of an application, still the entries in connection with the terms of the contract, the reports, the statements, mode of business adopted, and all circumstances shown, furnish evidence that they were so applied. (96 Am. St. Rep. 62, note a.)

"Payments by the debtor will be applied according to the intention of the parties where that can be determined with reasonable certainty. And the court will not generally exercise the power of appropriating payments when an appropriation has already been made by either debtor or creditor. Where an arrangement has been made that money paid shall be appropriated to the discharge of specific debts, the court may enforce the agreement." (30 Cyc. 1240.)

It is argued that the verdict is inconsistent; that the jury having found that Hamm was indebted on the account for $904.61, the sureties must be liable upon their bond for the same amount. But a finding against the principal does not necessarily bind the surety. While the principal was indebted for the amount found by the jury against him, the sureties are not indebted at all if it should be found that all that part of the account accruing during the time covered by the bond had been paid by remittances made after that date.

It is also argued that the instructions were contradictory and confusing, stating the general rule that, in the absence of an application by the parties, payments upon an account should be applied to the oldest items; also, that they should be applied to the unsecured rather than the secured items. It was held in the opinion in the guaranty company case that instructions stating the ordinary rule in running accounts, that the first credit items extinguished the first debit items, followed by the additional one, based upon equitable grounds, that payments in certain cases should be applied to unsecured rather than secured debts, were not prejudicially erroneous. The same observation applies here. Considered together, as they must be, the instructions were not contradictory or objectionable.

Error is also predicated upon the refusal of a request for a reference made on the ground that the action involved the consideration of a long account. Only three items of the account, however, were in dispute, and the refusal of the request was not erroneous.

Special findings were not requested. The general verdict must be held to include a finding, which is supported by the evidence, that the payments made after March 1, 1908, were applied by the parties themselves upon the account generally, and were, therefore, appropriated to the payment of the preceding items, thus discharging the indebtedness for which the sureties were liable. It follows that an investigation of the disputed items to ascertain whether that amount should have been reduced in unnecessary.

It may be that the judgment should be sustained for another reason. It has been held that the rule of applying payments preferentially to unsecured debts will not be applied where the other claims are secured by personal guarantors or sureties who are favorites of the law. (Note, citing cases, in 96 Am.

St. Rep. 56, 57.) But these personal guarantors must not be understood to include companies engaged in furnishing bonds for hire. (*Hull v. Bonding Co.,* 86 Kan. 342, 120 Pac. 544.) This feature of the case, however, was not argued and is not decided.

The judgment is affirmed.