[No. 20164. Department Two. January 19, 1927.]

PUGET SOUND POWER & LIGHT COMPANY, *Appellant*, v.
R. L. SPARGER *et al.*, *Respondents*.[1]

[1] MUNICIPAL CORPORATIONS (159-1)—CONTRACTORS' BONDS—NOTICE
OF CLAIMS AGAINST BOND. Rem. Comp. Stat., §1161, providing
for the protection of laborers and materialmen by a contractor's
bond on public work, upon their filing a claim within thirty
days after "completion of the contract with an acceptance of
the work" refers to the final completion of the contract by the
city or the sureties, and not to the time when the contractor
abandons the work or is discharged for non-performance.

[2] SAME (159-1, 179)—PUBLIC IMPROVEMENTS—CONTRACTOR'S BONDS
—NATURE OF CLAIMS—LIENS FOR LABOR OR MATERIALS—TIME OF
FILING. The lien provided by Rem. Comp. Stat., § 10320, upon
the fifteen per cent reserve required for the protection of
laborers and materialmen on public works, in case notice shall
be given as required by § 1161, requires notice within thirty
days from the completion of the work by the city or sureties,
and not from the time the contractor abandoned the work or
was discharged.

Appeal from a judgment of the superior court for
King county, Gilliam, J., entered January 18, 1926, in
favor of the defendants, upon sustaining a demurrer
to the complaint, in an action to determine the validity
of claims against a public contractor's bond.   Re-
versed.

*James B. Howe* and *Edgar L. Crider*, for appellant.

*J. Speed Smith* and *Henry Elliott, Jr.*, for respond-
ent Aetna Casualty & Surety Co.

*Thomas J. L. Kennedy* and *Ray Dumett*, for re-
spondent City of Seattle.

BRIDGES, J.—Demurrers to the amended complaint
having been sustained, the plaintiff elected to stand
upon its pleading, and a judgment was entered dis-
missing the action.

[1]Reported in 252 Pac. 544.

As stated by the complaint, the facts are these: On April 28, 1923, the city of Seattle entered into a contract with the respondent Sparger, whereby the latter obligated himself to construct a certain public improvement. Shortly thereafter, he executed a bond to the city for the purpose of complying with the statutes hereinafter mentioned, the respondent, The Aetna Casualty & Surety Company, being the surety. In September, 1923, Sparger entered into a written contract with the appellant, Puget Sound Power & Light Company, whereby it was to furnish to the contractor electric energy for light and power purposes in connection with the performance of the work. Under this contract, power and light were furnished, the value of which was a designated sum, which has not been paid. The contractor never completed the improvement, and the city at no time has accepted the work. On January 14, 1924, the city declared the contractor to have forfeited his contract, refused to permit him to further proceed with the work, and ejected him from the premises.

About a year and seven months after the city had terminated the contract, and on August 7, 1925, the appellant filed with the proper city officer its notice of claim against the bond taken by the contractor for the amount due it, and about four months later, and on December 3, 1925, the appellant filed with the proper city officer its notice of lien on the fund reserved by the city from moneys earned by the contractor. At the time the latter was ejected from the premises, he had earned under his contract, and was entitled to receive from the city, $10,967.60, out of which the city had paid to various creditors of the contractor, for work, materials and provisions, $6,726.15, and there remained in its hands $4,241.45, that amount being more than sufficient to pay the appellant's demand. It will

thus be noticed that by this action the appellant sought not only recovery against the bond, but also to establish a lien against the fund remaining in the hands of the city. We will first dispose of the claim against the bond.

[1] Section 1159, Rem. Comp. Stat. [P. C. § 9724], provides that, when any municipality shall let a contract similar to that involved here, it shall require the contractor to furnish a bond, conditioned that he shall not only faithfully perform his contract but also "pay all laborers, mechanics and subcontractors and materialmen, and all persons who shall supply such person or persons, or subcontractors, with provisions and supplies for the carrying on of such work."

Section 1161, Rem. Comp. Stat. [P. C. § 9727], provides that all persons intended to be protected by the bond shall have a right of action on it, "provided, that such persons shall not have any right of action on such bond for any sum whatever, unless within thirty (30) days from and after the *completion of the contract* with an acceptance of the work" by the city, notice be filed with the proper city officer that the bond will be looked to for payment. It is appellant's contention that it has thirty days after the completion of the work contracted for within which to give the statutory notice, and that, since the complaint alleges that the work has not yet been completed, the notice was filed in time. The respondent surety company contends that the notice must be filed within thirty days after the termination of the contract by the action of the city, that being, it is asserted, the "completion of the contract," and that, since such notice was not filed for several months after that time, it is too late.

While there are statutes of several states that are similar to ours, there is only one which has been called

to our attention, or which we have found, that is almost identical, and that is the statute of Tennessee. Our statute provides that the notice of claim against the bond shall be filed within thirty days from and after *"the completion of the contract"* and the acceptance of the work. The Tennessee statute provides that the notice shall be filed within thirty days after *"the contract is completed."* In the case of *City of Bristol v. Bostwick,* 139 Tenn. 304, 202 S. W. 61, it was held that where a contractor on a public building was enjoined from continuing the work, the filing of claims within thirty days from the time of the issuance of the injunction was a sufficient compliance with the statute, the court, holding that the contract was completed when the injunction was lawfully issued, saying that

"When the principal contractor abandons the work, as when his affairs are placed in the hands of a receiver, so far as he is concerned, he has terminated his contract. He has completed all the work he intends to do thereunder, and for the purpose of filing laborers' claims such a contract is completed."

When the case again came before the court it appeared that the city of Bristol had taken over the contract and completed it, and the court held "that the legal termination of the contract occurred on March 26, 1917, when the work was taken over by the city, and that only such claims as were properly filed within 30 days after such date come within the executed bond." *City of Bristol v. Bostwick,* 146 Tenn. 205, 240 S. W. 774.

In the case of *Kimball v. Parks,* 151 Tenn. 103, 268 S. W. 117, the question was again before the court. The facts there were that the contractor became insolvent and quit the work, which was finished by the surety. Within thirty days after the contractor abandoned the work, a materialman served notice of

his claim against the bond. After citing the cases above mentioned, the court said:

"The circumstance that the surety took over the work does not remove this case from the authority of those cited, in our opinion, nor does it defer the liability of the surety, nor postpone the time for filing claims, for materials already furnished. The principal contractor, to cover whose default the bond was required, has none the less abandoned the job, although the job is completed by the surety, instead of by the city."

The foregoing cases certainly support the view taken by the respondent surety company. There are other cases, however, which must be noticed.

In the case *Hull v. Massachusetts Bonding & Ins. Co.,* 86 Kan. 342, 120 Pac. 544, the statute provided that no action should be commenced on the bond "after six months from the *completion of said public improvements or public buildings.*" The court held that, where the contractor abandoned the work, suit might be commenced on the bond at any time within six months after the improvement or building is actually finished, no matter by whom. In *Coyle v. United States Gypsum Co.,* 64 Okl. 153, 166 Pac. 394, the statute was the same as the Kansas statute and the court held that the abandonment of the work by the contractor was not to be regarded as its completion, and that suit might be commenced at any time after the building was actually completed. The case of *Green Construction Co. v. Empire District Electric Co.,* 92 Okl. 127, 218 Pac. 1074, is to the same effect. In the case of *Allen v. Wells,* 75 Colo. 608, 227 Pac. 833, the statute provided that proceedings against the bond might be commenced "within six months after the completion of the work, and not otherwise." The court held, without citation of authority, that suit on the bond might be commenced at any time within six months after the

actual completion of the work. In the case of *Bader v. City of New York*, 51 Misc. Rep. 358, 101 N. Y. S. 351, the statute provided that notice of lien must. be filed within ".thirty days after the completion and acceptance of the work." The work was afterwards completed by the city at the expense of the contractor, and the court held that the time within which the notice of lien must be filed commenced to run from the time of the completion of the building.

It will be noticed that, in the cases last cited, the statutes being construed were in their actual wording different from ours, in that they provided that the suit upon the bond must be commenced within a certain period after the work is completed, and not, as provided by our statute, after the contract is completed. But we are of the view that the difference in the wording is immaterial. A contract is completed when the work provided for in it is completed, and not before. In no true sense is the contract completed simply because the contractor abandons the work or, because of his fault, the city, under the terms of the contract, terminates it. Ordinarily speaking, where the contractor fails to complete the work, the bondsman will complete it for him, or the city may complete it at the expense of the contractor and his bondsman. If it be held that the abandonment of the work by the contractor, or the refusal on the part of the city to allow him to proceed because of his own fault, amounts to a completion of the contract, then if the bondsman or the city complete the work, there would be no bond to which those furnishing labor or materials might look. It is hardly to be supposed that the legislature had in mind permitting such a condition of affairs as this. Since the bond is given for the protection of the laborer and materialman, it seems to us that it would be better

to hold that the contract is not completed until the work provided for by it is completed. This construction is, it seems to us, strongly supported by the further provision of the statute that the thirty days commences after "the acceptance of the work" by the city, for the city would not accept the work until the improvement has been completed.

We realize that a situation might arise where the construction given by us would be troublesome, as where the city refused to have the improvement completed after the contractor had abandoned it. But that situation does not necessarily arise here, and indeed will seldom, if ever, arise, and we will determine what should be done when such a condition is here in a case before us. It is true that the complaint simply alleges that the original contractor was ejected from the work which has not yet been completed, but this would not be equal to an allegation that the work will not be finished. It is possible for difficulties to arise, whatever construction we give the statute, but we think the meaning we have given it will make it subject to fewer objections than to give it the construction contended for by respondent.

If the legislature is dissatisfied with our view, it can easily remedy the defect.

[2] We will now undertake to dispose of that portion of the complaint whereby the appellant seeks to impress a lien upon the fund in the hands of the city and belonging to the contractor. This fund was accumulated by virtue of the provisions of Rem. Comp. Stat., § 10320 [P. C. § 9727-1], which provides that the city shall retain a sum equal to fifteen per cent

". . . for the protection and payment of any person or persons, . . . who shall perform labor . . ., and all persons who shall supply such person or persons or subcontractors with provisions and supplies

for the carrying on of such work. Said fund shall be retained for a period of thirty (30) days following the final acceptance of said improvement or work as completed,''

and such person shall have a lien on the fund, provided

''. . . notice of the lien of such claimant shall be given in the manner and within the time provided in section 1161 of this Code as now existing and in accordance with any amendments that may be hereafter made thereto.''

Section 1161 is the one that we have heretofore been discussing. Giving that section the construction we have heretofore, it follows that the notice of claim against the city was filed in time and the complaint stated a cause of action.

The judgment is reversed, and the case remanded with directions to overrule the demurrer to the amended complaint.

MACKINTOSH, C. J., PARKER, ASKREN, and TOLMAN, JJ., concur.