No. 28,893.

BEN F. WINCHEL, *Appellee*, v. THE NATIONAL FIRE INSURANCE COMPANY, *Appellant*.

(282 Pac. 571.)

Opinion
filed December 7, 1929.

*Robert Stone, James A. McClure, Robert L. Webb* and *Beryl R. Johnson,* all of Topeka, for the appellant.

*Ben F. Winchel,* of Osawatomie, *pro se.*

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought upon a fire insurance policy issued upon a dwelling house located on a farm. The policy was taken out on September 10, 1924, by the Farmers & Mechanics Bank of Osawatomie, then the owner of the farm, for a three-year period, and was destroyed by fire on February 15, 1927, about seven months before the expiration of the policy. The case was tried in part on an agreed statement of facts, and those material to present consideration are to the effect that at the time of the issuance of the policy the property was owned by the Farmers & Mechanics Bank, which was in the hands of a receiver when the fire occurred. The loss was a total one and the agent of the defendant was duly informed of the loss, who duly advised the company of the loss. The insured premises were occupied by the tenant of the bank at the time of the fire, were used by the tenant for agricultural purposes, and he and his wife were keeping some boarders in the house at the time of the fire. The policy for $1,000 was in full force at the time of the loss, and the bank through its receiver was the owner of the insured premises. No payment had been made on the insurance to the bank or its receiver and a sale of the assets of the bank was made by the receiver to the plaintiff, which included the claim for insurance of $1,000. As a conclusion of law the court held that the taking charge of the Farmers & Mechanics Bank by a receiver did not constitute a change of title; that the use of the premises by the insured through its tenant did not violate the provisions of the policy; that the notice of the loss was given as provided by the policy; that at the time of the

sale by the receiver the bank was the legal owner and holder of the claim of $1,000 under the policy and that the claim of insurance was then due and payable to the receiver; that the plaintiff purchased of the receiver at the sale of the assets this claim for insurance at a lawful sale, and that the plaintiff was entitled to recover thereon. There was a further finding that $200 was a reasonable attorney's fee.

Some testimony was introduced in connection with the agreed facts relating to the use of the premises, it being claimed that the premises were not used for agricultural purposes, and also some testimony as to the orders of the court respecting the sale. Motions were made to set aside the findings of fact and the conclusions of law, in which it was contended that the findings of fact were not supported by the evidence and the agreed statement, and that the conclusions of law were contrary to the facts and to the law.

There is a contention that the plaintiff cannot maintain the action on the ground that he did not prove ownership in himself of the claim of insurance. The contention is based on the fact that the order of sale, the notice of sale, and the approval of it as well as the deed of transfer, did not specifically mention the insurance claim. Some of the assets mentioned were promissory notes, judgments, liabilities of stockholders and real estate, but no mention of other assets or particularly of an insurance claim was made in these papers and orders. The insurance claim is hardly included in those particularly enumerated, but when public sale was made of the assets of the bank by the receiver he announced to all bidders that the claim for insurance would be sold as an asset and that the loss by reason of the fire would go to the purchaser. It was stipulated by the parties that the receiver was duly appointed to take over all the assets of the bank, including the farm, dwelling house and the policy of insurance, and that the fire occurred while the assets of the bank were in the possession of the receiver. The insurance claim was part of the assets of the bank and it became the duty of the receiver to sell it with the other assets. The sale of this asset was openly made and no reason is seen why it did not pass subject, of course, to any existing liens. We discover no ground for the contention that plaintiff did not become the owner of this asset of the bank, nor any reason why he could not maintain the action thereon against the de-

fendant. A payment of the claim by the defendant will certainly discharge it from all liability upon the policy.

In its answer the defendant alleged that there had been a transfer of title in the property insured without defendant's consent, which was contrary to a provision of the policy. The insurance claim was an asset of the bank. It passed into the possession and control of the receiver by operation of law, and it appears that the loss occurred after the property was in the custody of the law. The action of the receiver in making the sale was taken as an arm of the court. He was an executive officer of the law and under the direction of the court disposed of the assets of the bank, including the insurance. The custody of the receiver was the custody of the law, and the ownership of or title to the assets remained in the bank, but the right of possession was in the receiver as an officer of the court. The transfer of custody did not effect a change of title within the meaning of the policy provision that consent of the insurance company was necessary to a transfer of title. The ownership acquired by plaintiff came to him through operation of law and not by the voluntary act of the insured.

Another contention is that there was a violation of the terms of the policy relating to the occupancy of the insured premises which bars a recovery. There was a provision in the policy that, "If the premises described shall be occupied for other than farm purposes, . . . the policy shall be null and void." The farm was and had been used for hay and pasture land, except a small garden patch near the house. A lease of standard form was made by the bank to one Gallagher. He had a road contract and rented the farm on which to place his live stock, mostly mules. Did the placing and pasturing of these animals by the tenant operate to cancel or forfeit the insurance? There was in fact no change in the use of the farm during the existence of the policy. The use of the farm for pasture and hay is essentially agricultural in character. Most of the farms owned or leased are devoted in part to pasturage and the growing of hay. That is a farm use, and it cannot be said that it is any less a farm purpose when it is confined to one farm product instead of a number. Again, it was used by the tenant for the purpose it was used by the bank when the policy was issued. The insurance contract was not affected by the fact that the principal business of the tenant was building a road in the vicinity. The use of the farm made by the tenant is the controlling considera-

tion. Nor can there be said to be a change of use by reason that a few men were boarded at the farm house.

Some contention is made that the receiver failed to make sworn proofs of loss as required by the contract. As shown, timely notice was given to the authorized agent of the defendant, who immediately notified the company. It is not denied that this notice was given and received, but it is said that sworn proofs of loss are something more than notice of the destruction of the building, but as the defendant denied all liability for any amount on grounds that the policy had been rendered void, a detailed statement of the loss would have been useless and unavailing. In the agreed facts defendant has stipulated that the insured house was entirely destroyed by fire, in which event the defendant had agreed to pay the entire amount named in the policy. A fuller account of the loss would have served no purpose as it might have done in case of a partial loss. A denial of liability because the policy was void upon other grounds in effect waived the right of the company for sworn proofs of loss. We think there is nothing substantial in this contention, nor do we find anything material in some other objections made by the defendant.

The judgment is affirmed.